RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
JOANNE L. DIAMOND
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Joanne_Diamond@fd.org

Attorney for Todd Andrew Maxson

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>TODD ANDREW MAXSON,<br><br>        Defendant. | Case No. 2:24-cr-00141-CDS-BNW<br><br>**Defendant's Sentencing Memorandum and Objections to the Presentence Report**[1] |

Pursuant to a plea agreement with the government, Mr. Maxson pled guilty to a three-count indictment charging him with Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a), Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2), and Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). ECF No. 31 at 4 ¶¶1-2. He asks the Court to impose the recommended 15-year mandatory minimum sentence. *Id.* at 19 ¶87.

---

[1] This memorandum is timely filed.

### A.     Sentencing Memorandum

The PSR correctly calculates Mr. Maxson's total offense level as 35, ECF No. 31 at 11, ¶45, and his criminal history category as one, *id.* at 12, ¶52. His guideline sentencing range is 168-210 months. *Id.* at 25. The recommended sentence of 15 years in prison is the mandatory minimum sentence for Count One. The PSR agrees that this sentence is appropriate. *Id.* A sentence of 15 years in prison is sufficient, but not greater than necessary, to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

Mr. Maxson attaches to this memorandum a letter in support from his daughter, Rachel Soto. *See* Exhibit A, Rachel Soto Support Letter.

### B.     Objections to the Presentence Report

### 1.     Objections to financial penalties

Mr. Maxson objects to the imposition of a JVTA assessment. ECF No. 31 at 22, ¶109. Mr. Maxson is indigent (he is eligible for appointed counsel). He is also facing a 15-year minimum term of imprisonment and will be eligible for social security on his release. His indigency and limited future earnings capacity are such that a JVTA assessment should not be imposed. *See United States v. Otradovec*, 72 F.4th 794, 797 (7th Cir. 2023); *United States v. McMiller*, 954 F.3d 670, 675 (4th Cir. 2020); *see* 18 U.S.C. § 3572.

Mr. Maxson also objects to the imposition of an AVAA assessment. See ECF No. 31 at 25. As discussed above, his indigency and limited future earnings capacity are such that an AVAA assessment should not be imposed.

**2.    Objections to recommended special conditions of supervised release.**

**a.    Recommended special condition two, no alcohol**

Mr. Maxson objects to recommended special condition two, no alcohol. *See* ECF No. 31 at 29. Mr. Maxson does not have a history of problem drinking. He does not object to a special condition requiring him to submit to an alcohol abuse assessment and to comply with any treatment recommendations.

**b.    Recommended special condition eight, polygraph testing**

Mr. Maxson objects to recommended special condition eight, polygraph testing. *See* ECF No. 31 at 30. This condition would require Mr. Maxson "to submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure [he is] in compliance with the requirements of [his] supervision or treatment program." *Id.* Because the polygraph testing requirement is not reasonably necessary to meet the goals of his supervised release and infringes on his Fifth Amendment right against self-incrimination, Mr. Maxson objects to this proposed requirement.

**(1)    Polygraph testing does not meet the goals of supervised release.**

Polygraph evidence has long been disfavored in federal court. *Toussaint v. McCarthy*, 918 F.2d 752 (9th Cir. 1990), *as amended* 926 F.2d 800 (9th Cir. 1990). "Polygraph test results are often inadmissible in court, and some scientists question polygraph testing's utility." *United States v. Begay*, 631 F.3d 1168, 1175 (10th Cir. 2011) (cleaned up); *see also United States v. Schaeffer*, 523 U.S. 303, 309 (1998) ("[T]here is simply no consensus that polygraph evidence is reliable.

To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques."). Given the doubtful accuracy and validity of polygraph testing, it is unclear how testing would ensure compliance with supervision conditions or promote Mr. Maxson's treatment. Polygraph testing and its results are inherently unreliable. If anything, polygraph testing serves as an impediment to offender rehabilitation, as its unreliable and arbitrary results could be improvidently used by treatment providers to shape a course of treatment or by probation officers to imprudently assess compliance.

Nor can polygraph testing serve as a deterrent to Mr. Maxson. Arbitrary results, such as those a polygraph examination produces, provide neither motivation to be truthful during the examination (because the exam does not reliably indicate truthful responses) nor the incentive to refrain from prohibited activity (because the exam does not reliably uncover deceitful responses).

Probation officers are instructed to "collaborate with the polygraph examiner in the design of the questions presented during a polygraph test. The questions should consider any treatment issues (if the defendant is in treatment), behavior that is not in compliance with the conditions of supervision, and other supervision concerns." *Overview of Probation and Supervised Release Conditions*, Admin. Off. of The U.S. Courts Prob. & Pretrial Serv. Off. (Nov. 2016), *available at* https://www.uscourts.gov/services-forms/polygraph-sex-offender-management-probation-supervised-release-conditions. Thus, under the guise of "treatment," faulty polygraph results may very well lead to someone like Mr. Maxson, who otherwise remains in full compliance with treatment and supervision conditions, to be violated—needlessly wasting judicial and executive resources and depriving

an individual of his liberty—while another individual who is out of compliance remains undetected and among the public.

A defendant arbitrarily "failing" a polygraph examination may be violated solely based on unreliable results. Such an outcome, and even the risk of such outcome by having to succumb to custody and litigate revocation before the court, bears no reasonable relationship to effectuating the goals of supervised release, and cannot reasonably "ensure [Mr. Maxson is] in compliance with the requirements of [his] supervision or treatment program. ECF No. 31 at 30.

### (2)    This condition inadequately safeguards Mr. Maxson's Fifth Amendment rights.

This condition requires Mr. Maxson to "appear and answer questions truthfully" regardless of whether they are self-incriminating. *United States v. Stoterau*, 524 F.3d 988, 1004 (9th Cir. 2008). Although the Ninth Circuit has held polygraph conditions do not require *Miranda* warnings under the Fifth Amendment because polygraph examinations do not constitute custodial interrogations, *see id.*, the plain language of this condition does not provide Mr. Maxson notice that he can invoke his Fifth Amendment right against self-incrimination in response to questions asked during polygraph examinations. Given that this condition requires his attendance and truthful answers, it could be read as if he is required to truthfully answer all questions asked. This impinges on his right against self-incrimination because Mr. Maxson's refusal to answer questions or failure of the polygraph test threatens future revocation or a new criminal indictment.

Ninth Circuit precedent conflicts as to the application of the right against self-incrimination during a supervised release term and revocation proceedings.

5

*United States v. Hulen* holds that "[a] revocation proceeding is not a new criminal proceeding, but is instead part of the 'matrix of punishment' arising out of the original crime. . . . Thus, the full panoply of rights due a defendant in a criminal proceeding does not apply to revocations." *United States v. Hulen*, 879 F.3d 1015, 1020 (9th Cir. 2018) (citation omitted). There, the Court found "[t]he right against self-incrimination did not prevent the use of his admissions [during sex-offender treatment] to revoke his supervised release." *Id.* at 1020–21.

But this is inconsistent with the Court's holding in *United States v. Bahr*. 730 F.3d 963, 966–67 (9th Cir. 2013). In *Bahr*, the defendant was required to take a full disclosure polygraph test regarding his sexual history as a part of his sex offender treatment program—something that will likely be required of Mr. Maxson. *Id.* at 965. There the Court held, "[w]hen the government conditions continued supervised release on compliance with a treatment program requiring full disclosure of past sexual misconduct, with no provision of immunity for disclosed conduct, it unconstitutionally compels self-incrimination." *Id.* at 966. The Court found "[r]evocation of supervised release is not necessary to violate the right [against compelled self-incrimination]; the threat of revocation is itself sufficient to violate the privilege and make the resultant statements inadmissible." *Id.*

*Hulen* fails to address *Bahr*'s language about the threat of revocation being sufficient to violate the Fifth Amendment privilege. Further, Mr. Maxson's constitutional challenge is broader in scope than the issue before the Court in *Hulen*. Here, Mr. Maxson claims this condition violates his right against compelled incriminating statements for the purposes of future revocation and new criminal charges. This broader challenge is akin to *Bahr*, a case about "a

6

statement made during a period of post-prison supervision [that] was used to determine a sentence in a later, unrelated criminal proceeding." *Hulen*, 879 F.3d at 1020. Thus, the potential for compulsion of self-incriminating statements during his polygraph tests is a violation of Mr. Maxson's Fifth Amendment right.

### c.    Recommended special condition nine, computer monitoring software

Mr. Maxson objects to recommended special condition nine, which would require him to submit his electronic devices to the installation of computer monitoring software by the probation officer "[t]o enable the Search and Seizure Condition." ECF No. 31 at 30.  The Ninth Circuit has held that blanket computer monitoring without limitation is overbroad. *Hulen*, 879 F.3d at 1020. While "[a] computer monitoring condition in some form may be reasonable," "to comply with the Fourth Amendment, it must be narrowly tailored—producing no greater deprivation of liberty than is reasonably necessary." *Hulen*, 879 F.3d at 1020.

In *Sales*, a defendant convicted of counterfeiting Federal Reserve notes received a computer monitoring condition requiring installation of "monitoring software and/or hardware." 476 F.3d at 734. The Ninth Circuit held the condition gave "no indication as to what kinds or degrees of monitoring are authorized— and, as courts have noted, monitoring software and/or hardware takes many forms, with greatly varying degrees of intrusiveness." *Id.* Because the monitoring condition was not narrowly tailored or limited, the Court vacated the condition and remanded for clarification. Here, like *Sales*, there is no language in proposed special condition nine limiting the computer monitoring.

The Ninth Circuit clarified acceptable limited computer monitoring conditions in *United States v. Quinzon.* 643 F.3d 1266 (9th Cir. 2011). In

*Quinzon*, the Court affirmed a computer monitoring condition tailored to monitor only internet-related computer activity. *Id.* at 1270–75. The defendant downloaded child pornography from the internet, resulting in a possession of child pornography conviction. *Id.* at 1267. Because the condition monitored only internet-related activities, the Court found it "comports with the district court's overall intention of preventing Quinzon from accessing and sharing child pornography." *Id.* at 1272–73.

The issue of computer monitoring in this district came up recently in *United States v. Reginald Weaver*, 2:24-cr-00188-RFB-BNW-1. There, Judge Boulware ordered the parties to meet and confer with probation to create a computer monitoring condition that was narrowly tailored to the individual defendant, pursuant to *Quinzon*. In meeting with probation, the parties learned that the monitoring software used by probation cannot be tailored to an individual defendant or limited in any way. Because of this, the computer monitoring condition violates *Quinzon* and this Court should decline to impose it.

### d.    Recommended special condition ten, computer search

Mr. Maxson objects to recommended special condition ten, which would require him to submit his computers to "periodic, unannounced searches" by the probation officer to ensure compliance with the computer monitoring condition (proposed special condition nine). ECF No. 31 at 30. This condition significantly intrudes on Mr. Maxson's liberty interests by requiring him to submit to searches of his computers and other electronic devices without any suspicion.

8

## Conclusion

Mr. Maxson respectfully moves the Court to sentence him to 15 years in prison.

Dated: March 3, 2025.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Joanne L. Diamond*

JOANNE L. DIAMOND
Assistant Federal Public Defender
Attorney for Todd Andrew Maxson